Samuel M. Gold, J.
This is a proceeding to review an order of the State Bent Administrator, which denied petitioners’ application to increase the maximum legal rents so as to yield a return of 6% per annum on the price paid for the property by petitioner Payson. The property is concededly yielding at least 6% per annum on its assessed valuation. The question presented for determination in this proceeding is whether respondent erred in refusing to use the price paid by Payson, which was considerably in excess of the assessed value, as the base for computing the 6% return.
A prior proceeding had been brought to review a similar order of the respondent’s predecessor which had been used without affording petitioners a hearing. That proceeding resulted in an order remitting the matter ‘ ‘ for the purpose of affording the petitioners an opportunity to submit such evidence as they deem advisable.” Evidence was taken, but, in the opinion of respondent, it did not justify a determination in favor of petitioners and the prior order of the Administrator was affirmed.
Prior to April, 1957, subdivision 4 (par. [a], cl. [1]) of section 4 of the State Residential Rent Law (L. 1946, ch. 274) provided that the basic valuation to be adopted in determining whether a landlord was entitled to a so-called “ hardship increase ” was the equalized assessed valuation of the property at the time the landlord’s application was filed. The respondent was given discretion, however, to adopt other bases of valuation, for example the sale price of the property upon a bona fide sale after March 15,1951.
In 1957, the Legislature provided (L. 1957, ch. 755) that in the case of a bona fide sale of the property after March 15,1953, the sale price rather than the assessed value was to be employed provided that the sale was the “ result of a transaction at arms’ length, on normal financing terms at a readily ascertainable price and unaffected by special circumstances as a forced sale, exchange of property, package deal, wash sale or sale to cooperative (italics the court’s) ”. Subdivision 5 of section 33 of the State Bent and Eviction Begulations was modified to reflect the statutory amendment.
The reason that the price paid on a sale to a co-operative was considered by the Legislature not to be appropriate for use as the valuation upon which the 6% return is to be computed was the Legislature’s recognition of the commonly known fact that much higher prices than normal are generally paid where properties are purchased for the purpose of making them co-operative.
*817 The evidence adduced at the hearing amply supports the respondent’s finding that the property was purchased by Pay-son and his associates for the purpose of making it co-operative. Payson admitted that, prior to the time he executed the contract to purchase, he had made large profits by transforming two other apartment houses into co-operatives and that the possibility of selling the apartments here involved on a co-operative basis was considered by him at the time he signed the contract. Payson admitted that the possibility of “ co-oping this building ’ ’ had been discussed in December (before the contract) with Mr. Hardgrove, the broker who had offered the property to him, and that the same subject had been discussed by Payson with his associates prior to the contract to purchase. Payson also conceded that he had discussed the preparation of a co-operative plan for the building, as early as February 5, 1957 (only a few weeks after the signing of the contract), with his lawyer, Mr. Isaacs, and with Mr. Hardgrove. The possibility that Payson had requested the preparation of a co-operative plan even before the contract was signed is suggested by the uncertainty of his answer that this ‘ ‘ probably ’ ’ occurred after the signing of the contract. The fact that there was no “ formal ” retainer of Hardgrove to prepare a plan until February 18, 1957 is immaterial, for concededly informal discussions had been going on before that. A draft of the proposed plan was ready as early as March 1 and a plan was actually submitted to the tenants on April 9 or 10,1957.
Petitioners contend that Payson and his associates were not a co-operative within the meaning of the statute and regulations and that the price paid by them should have been used as the valuation of the property for the purpose of determining what constituted a return of 6% per annum. Respondent, on the other hand, urges that although in form the purchase may have been by Payson, in substance it was a purchase by the co-operative which Payson and his associates planned to form. Respondent points out that a contrary view would emasculate the legislative attempt to exclude sales prices derived from sales to co-operatives from the sales prices to be used instead of assessed valuations: “ The reason for acquiring title in Henry Payson’s name on March 15, 1957 is quite obvious. Had the co-operative taken title directly in its own name, the price it had paid for the property, regardless of the amount, could not be adopted as the base for the computation of the net annual return for, as stated previously, this is barred by the Statute and Regulations. Because of this Statutory bar, title to the property was taken *818 in Henry Payson’s name individually. However, the Commission has the power to look behind the facts as shown to discover the true nature of the transaction. ’ ’
This reasoning of respondent is very persuasive. Certainly, there was abundant basis for a finding that the sale was, in substance and in spirit, a sale to a co-operative, and that Payson could not, merely by taking the contract and title in his own name, circumvent the statute. Even if the view be taken that technically the sale was not to a co-operative, the respondent’s refusal to employ the sales price as the basis of valuation would nevertheless be justified. The statute and the regulations required the Administrator to reject the sales price where it is affected “ by special circumstances such as a * * * sale to a cooperative ”. (State Residential Rent Law, § 4, subd. 4, par. [a], cl. [1]; State Rent and Eviction Regulations, § 33, subd. 5.) In the instant case, even if it be assumed that the sale was not, legally speaking, to a co-operative, there were clearly present special circumstances “ such as a * * * sale to a cooperative ”, since, for all practical purposes, the sale was the same as a sale to a co-operative. The higher than normal price resulting when a property is purchased for the purpose of making it co-operative was the evil at which the legislative exception was directed. The “ special circumstances ” requiring the Administrator to reject the sales price as the valuation base are not limited to a sale technically made to a co-operative, but encompass as well (though not specifically mentioned in the statute and regulations) purchases for the purpose of making the property co-operative. It is, perhaps, not without significance that the price of $2,800,000 at which Payson purchased the property, exceeded very substantially the offers which the seller had theretofore received from others.
Petitioners lay great stress upon a prior determination, by the Administrator’s predecessor, in which the price paid on a sale to a co-operative was accepted as the valuation base. The statute and regulations enforced prior to April, 1957 applied in the case referred to, which was determined before the April, 1957 amendment. At the time in question, the Administrator possessed discretion to take the sales price derived from sale to a co-operative as the base for computing the landlord’s return. Finding the price paid by the co-operative to be reasonable, the Administrator, in the exercise of his discretion, had used the price as the valuation basis. Under the statute now in force, however, the sales price must be rejected, if the sale is a sale to a co-operative or if other special circumstances “ such as ” those specifically mentioned in the statute affect the sale.
*819 As the statute is presently worded the Administrator, as he has found, is not at liberty to accept the sales price to a co-operative as the valuation base even if the price was reasonable. The statutory wording is such that the reasonableness of the price paid in a sale to a co-operative is no more open to inquiry than the reasonableness of the price paid on a “ forced sale ” or ‘1 wash sale ’ ’, other specifically mentioned circumstances which preclude acceptance of the sale price as a valuation base. The same ruling is required where the transaction, in practical effect, is a sale to a co-operative, although in form it may not be.
For the reasons indicated, the motion is denied and the proceeding dismissed.